UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: JOSHUA GEARY (Debtor)    Chapter 7
Case No. 19-30170
Hon. Joan A. Lloyd

_____

WOOD FINANCE, INC
d/b/a PREMIER ACCEPTANCE (Creditor)

      Plaintiff,
_____

  v.

JOSHUA GEARY (Debtor)    ADVERSARY PROCEEDING
CASE NO.

Defendant.

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

## PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE

Plaintiff- Creditor, Wood Finance, Inc, d/b/a Premier Acceptance, Inc., ("Premier") as and for its Complaint against Defendant-Debtor Joshua Geary ("Debtor"), respectfully alleges:

## JURISDICTION

1.    On January 21, 2019, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Kentucky.

2.    On February 21, 2019, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3.    As of the date of this Complaint, the Debtor has not been granted a discharge.

4. This Complaint is timely, because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on April 22, 2019.

5. This is an adversary proceeding in which the plaintiff-creditor is seeking a determination as to the dischargeability of the debt owed by the Debtor and his company to Premier under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(4).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8. Premier is a business corporation organized under the laws of the State of Indiana, is authorized to do business in the State of Indiana, and maintains its principal office in Indianapolis, Marion County Indiana.

9. Premier is a creditor of the Debtor and his automobile dealership, Cliff & Sons Auto Sales ("Dealership").

10. The Debtor in the above-captioned case, Joshua Geary ("Geary"), is a Defendant in this proceeding and at all relevant times has resided in Jefferson County, Louisville Kentucky. Geary owned and operated a Used Vehicle his Dealership at 7053 Dixie Highway Louisville, Kentucky 40258 under a license issued by the State of Kentucky.

11. Cliff and Sons Auto Sales, LLC ("CASAS") is a Kentucky limited liability company and maintains a used car sales business in Louisville, Kentucky. Geary is a fifty percent (50%) owner, member, and operator of CASAS.

## FACTS APPLICABLE TO ALL COUNTS

12. In June of 2017, CASAS and Premier executed and entered into a Motor Vehicle Dealer Agreement ("MVDA"). Attached hereto and incorporated herein by reference as **Exhibit A** is a copy of the MVDA signed by the parties.

13. The MVDA governs transactions between Premier and CASAS, including but not limited to CASAS's assignment of any Retail Installment Contract and Security Agreement ("RICSA") to Premier, which is commonly referred to as a "finance contract".

14. CASAS sold used motor vehicles to its consumers, entered finance contracts with its consumers (i.e., RICSAs), and then sold the RICSAs to Premier under the terms and conditions of the MVDA.

15. Pursuant to the terms of the MVDA, Premier purchased from CASAS a RICSA in a transaction involving the sale of a 2013 Volkswagen Passat ("Vehicle") on or around January 13, 2018 to John and Alisha McClure ("McClures"), customers of CASAS. Attached hereto and incorporated herein by reference as **Exhibit B** is a true and accurate copy of the RICSA.

16. To date, Premier has received two payments under the RICSA: one on or about February 12, 2018 in the amount of $302.97, and one on or about March 28, 2018 in the amount of $312.97. No other payments have been made to Premier as required under the RICSA.

17. In June of 2018, CASAS represented to Premier that the RICSA signed by the McClures was rescinded and the Vehicle was returned to CASAS.

18. CASAS was not an agent and had no right or authority to rescind the transaction.

19. Premier demanded repayment of the full amount of the RICSA. CASAS has failed and refused to return the proceeds advanced by Premier for the Vehicle.

20. Premier learned that CASAS had actually accepted the Vehicle as a trade-in from the McClures and falsely represented in writing that the McClure's debt to Premier would be paid off. However, CASAS did not make the represented payoff and then resold the Vehicle to another

customer, despite its previous representation to Premier about the transaction with the McClures being rescinded, the representations to the McClures that the payoff would be made and without honoring the terms of the RICSA or MVDA.

21.     CASAS knowingly and intentionally failed to pay Premier, failed to process the title and to perfect Premier's security interest in the Vehicle and wrongfully resold the Vehicle by skipping title transfer to the McClures and did so without recognizing or noting Premier's security interest in or lien it held on the title of the Vehicle.

22.     CASAS was obligated to return the funds advanced by Premier for the RICSA upon the trade-in of the Vehicle by the McClures, but knowingly and intentionally did not return the proceeds owed to Premier and held by CASAS in trust and as a fiduciary of Premier and the McClures.

23.     CASAS also had a fiduciary duty to Premier to secure and record Premier's lien on the title for the Vehicle, but knowingly, intentionally, and wrongfully did not do so.

24.     CASAS fraudulently and/or intentionally breached the terms of the RICSA and MVDA when it withheld the proceeds advanced by Premier, purposefully breached its contractual and/or fiduciary obligation to perfect Premier's security interest/lien on the title for the Vehicle, improperly skipped title, wrongfully resold the Vehicle prior to perfecting Premier's security interest/lien, knowingly subverted Premier's security interest/lien in the Vehicle, misrepresented to Premier and the McClures that the proceeds would be paid for the Vehicle and then failed and/or refused to pay Premier the original proceeds advanced for the Vehicle or the proceeds from the trade-in and wrongful resale of the Vehicle by CASAS.

25.     CASAS misrepresentations to Premier and the resale of the Vehicle in knowing and intentional violation of Premier's security interest in the Vehicle, which included the right to receive any proceeds from the sale thereof, constitutes theft, conversion, or fraud under Indiana Code 35-43-1-1 et seq. and KRS Chapter 514.010 et. seq.

26. CASAS committed fraud, theft, theft by deception or conversion when it wrongfully and intentionally exerted unauthorized control over the RICSA, the Vehicle and the title to the Vehicle when it failed and refused to note Premier's security interest and remit the proceeds to Premier from the original allegedly rescinded sale and also by the misrepresentation that the payoff would be made to Premier on the trade-in, skipped title transfer and resold the Vehicle with the intent to deprive Premier, and its borrower, the McClures of the value of the property rights held in the Vehicle and the proceeds generated from its sale.

27. Geary, an equal owner of CASAS, participated in, authorized, ratified, was aware of, complicit in or benefited from the fraudulent misrepresentations and the intentional and wrongful misconduct of CASAS, and should be held personally, jointly, and severally liable for such misconduct.

28. Based on information received from the Kentucky Commission of Motor Vehicles, Geary wrongfully assigned the assets of CASAS to his sons, and also assigned the Kentucky Used Motor Vehicle Dealer License to his sons, who now operate and own the assets as Cliff & Sons Auto Sales II at the same location as CASAS. Geary's sons now receive the monetary benefit and rights of the CASAS assets, including the Kentucky Motor Vehicle Dealer license.

29. Based on information and belief Debtor or his co-owner son in CASAS are still involved in the business.

30. Through January 28, 2019, the balance due under the RICSA is $12,096.02 with $3.04 per diem for interest. Premier is due its collection costs, reasonable attorney fees and court costs from CASAS and Geary for their false statements, deception fraud and violation of the fiduciary duty to protect Premier's interest in the Vehicle.

31. Premier has claims for breach of contract, misrepresentation, unjust enrichment, fraud, deception, conversion, statutory damages, attorney fees, collection and court costs with respect to the debt which Geary seeks to have discharged by this Court.

## COUNT I

### NON-DISCHARGEABILITY OF PREMIER'S CLAIMS AGAINST GEARY UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

32. Premier repeats and re-alleges the allegations set forth in paragraphs 1 through 30 of this Complaint as if set forth at length herein.

33. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .

34. All or part of the debt owed to Premier, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

## COUNT II

### NON-DISCHARGEABILITY OF PREMIER'S CLAIMS AGAINST GEARY UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

35. Premier repeats and re-alleges the allegations set forth in paragraphs 1 through 33 of this Complaint as if set forth at length herein.

36. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

37. All or part of the debt owed by Geary to Premier, as evidenced by the RISCA assigned to Premier and the Trade-in Agreement entered into with the McClures, which misrepresented the obligation to Premier would be satisfied or the lien perfected, are non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

WHEREFORE, Plaintiff, Wood Finance, Inc, d/b/a Premier Acceptance respectfully requests that this Court enter a Judgment in its favor and against Joshua Geary and his Dealership determining that the Debtor and his business owe the debt to Premier in the amount of $12,096.02 with $3.04 per diem for interest plus collection costs, reasonable attorney fees and court costs from Joshua Geary and his dealership for their false statements, deception, fraud and violation of the fiduciary duty to protect the interest in the Vehicle held by Premier and that the Judgment be declared non-dischargeable under Bankruptcy Code § 523(a)(2)(A) and 523(a)(4), and granting Premier such other and further relief as this Court may deem just and proper.

**INDIANA DEALER COUNSEL**

**MALLOR | GRODNER LLP**

/s/ Michael P. Shanahan
Michael P. Shanahan #26919-49
mike@indianadealercounsel.com
*Attorney for Wood Finance, Inc.,*
*d/b/a Premier Acceptance*

**INDIANA DEALER COUNSEL**
**MALLOR | GRODNER LLP**
101 W. Ohio St., Suite 1600
Indianapolis, Indiana 46204
(317) 453-2000
*Attorney for Wood Finance, Inc.,*
*d/b/a Premier Acceptance*

# MOTOR VEHICLE DEALER AGREEMENT

Between

**Premier Acceptance**

("you," "your," or "yours" including any parent, subsidiary, or affiliate)

and

*Clark & Sons Auto Sales, LLC*

("we," "us," or "ours")

In consideration of and as an inducement for your purchase of retail installment sales contracts, security agreements, notes, chattel mortgages, guarantees, title retention or lien instruments, and other related documents or collateral (hereinafter individually and collectively referred to as "Contract" or "Contracts") acquired by us from retail purchasers of motor vehicles, we hereby represent, warrant, covenant, and agree as follows:

**PURCHASE** You shall have no obligation to purchase any Contract except only those which are acceptable to you in all respects. Contracts which are purchased by you shall be purchased in accordance with your dealer plan in effect at the time the Contract is tendered to you. You may change your plan at any time and from time to time.

**PRICE** The price to be paid us for each Contract will be such a price as we may agree upon from time to time. The purchase price, less any amount withheld pursuant to paragraph 7 of this agreement, shall be paid at the time of purchase. Our negotiation of your check or our acceptance of funds for the purchase price of a Contract shall evidence our acceptance of the amount of such purchase price.

**BOOKS AND RECORDS** All Contracts assigned to you shall be subject to the representations, warranties and covenants set forth in this agreement, and we will make suitable and proper entries on our books showing the absolute sale of such Contracts to you. Your title to Contracts and the property covered thereby shall at all times be superior to any right, title, or lien of ours, if any. You shall make and receive all collections from purchasers on Contracts, and we will not accept payments thereon. We agree not to commingle any payments received by us with our funds, but to hold such payment in trust for you and to remit to you promptly all payment so collected. You may endorse or cause to be endorsed our name upon checks and other forms of payment received in respect to Contracts and otherwise sign and endorse our name on any Contracts or documents to carry out the intent of this agreement. You may extend the time of payment on Contracts, defer payments, and compromise or adjust claims on Contracts or property covered thereby without our approval and without diminishing our liability hereunder. We agree to furnish you promptly such financial statements and other information concerning our business affairs as you may request from time to time. We also agree to permit any of your representatives to examine and make extracts from any of our books and records upon your request.

**REPRESENTATIONS AND WARRANTIES** We hereby represent and warrant to you that each Contract will represent a bona fide sale of the vehicle described therein to the purchaser(s) named therein for the amount set forth therein free from defense, set off or counter-claim of any nature; that the vehicle covered by each Contract will have been delivered to and accepted by the purchaser(s) before the Contract is transferred to you and each of the purchaser(s) named in the Contract was of legal contractual age at the time they executed the Contract; that any down payment disclosed in such Contract has been paid in full by the purchaser(s) in cash and/or trade as shown in said Contract, and no part of said down payment consisted of notes or postdated checks unless specifically shown therein; that no adjustments in the cash price of any vehicles, or related goods or services, sold pursuant to any Contract have been made as a result of the pricing or any discount pursuant to this agreement; that each contract will be the legal obligation of the purchaser(s) named therein and will be valid and enforceable

Dealer Initial JG                    1of 4

in accordance with its terms; that the statements made by the purchaser(s) in the credit statement are true and complete to the best knowledge of the undersigned; that the signatures of the purchaser(s) named in each Contract will be genuine; that before each Contract is assigned to you, we will have complied with all applicable provisions of the Federal Truth In Lending Act and Regulation Z, the Equal Credit Opportunity Act and Regulation B, the Fair Credit Reporting Act, and all other laws and regulations which are applicable to the transaction represented by the Contract; that we will notify each prospective purchaser of your name and address when such purchaser(s) credit statement information is submitted to you for consideration; that we will be the sole and unconditional owner of each Contract assigned to you and no third party except the purchaser(s) named in the Contract will have any interest in the Contract or any vehicle covered by the Contract; that the security interest created by the Contract will be a valid prior security interest in any vehicle covered by the Contract and we will have taken all action which is necessary to create, and perfect the security interest in any vehicle covered by the Contract within 20 days following the date of the Contract; and that all financial statements which we have delivered to you and all financial statements which we may hereafter deliver to you fairly and accurately present our financial condition on the dates thereof and disclose all of our liabilities, and there has been no material adverse change in our financial condition since the most recent of such financial statements except as we have disclosed to you in writing.

All of the foregoing representations and warranties are made to induce you to purchase said Contracts, and if there is any breach of the Dealer Agreement or any breach of any representations or warranties herein with respect to any Contract, without regard to your or our knowledge or lack of absolute warranty knowledge with respect thereto, or your reliance thereon, we will, on demand, purchase such Contract from you for the then remaining unpaid balance owing on such Contract, together with all costs incurred by you, less your unearned finance charges; and, each of the foregoing representations and warranties shall survive the execution and delivery of this agreement and the assignment of each Contract to you, and shall continue in full force and effect until all Contracts which you have acquired from us have been paid in full and we have performed all of our obligations to you hereunder.

**DEALER ASSIGNMENT** We will sell and assign all of our right, title and interest in the Contracts to you without recourse as to payment of the purchaser's obligation, except that notwithstanding any other provisions of this agreement to the contrary and as may be otherwise provided in this agreement between us or in the individual Contracts assigned to you, all Contracts purchased by you covering commercial vehicles used for long distance hauling, commercial vehicles of more than 3/4 ton capacity, buses, cars used for taxi or "you drive it" service, vehicles sold to relatives or employees, or where otherwise specifically agreed upon, will bear our full recourse endorsement, and we guarantee payment of the unpaid balance on the Contract upon your demand. We give you full power to collect and discharge the Contract and to take all legal or other proceedings as we could take except for its assignment to you.

**DISPOSITION OF REPOSSESSED VEHICLES** You shall have the right to store on our premises without cost to you any repossessed vehicles covered by the Contracts and while thus stored, we shall be the bailee of the vehicle and shall exercise reasonable care in the safekeeping and preservation of the vehicle. The sale of a repossessed vehicle shall be conducted in a commercially reasonable manner in conformity with the Uniform Commercial Code. If the proceeds from the sale of the repossessed vehicle exceed the sum of the net unpaid balance on a Contract, plus the cost of putting the vehicle into saleable condition and any selling, repossession and out-of-pocket expenses, the amount of such excess will be returned to the customer.

Any repurchase of Contracts made by us pursuant to this agreement shall include your rights and obligations with respect to the repossessed vehicle, and shall be assigned without any express or implied warranty of any kind by you and shall be without recourse against you.

Dealer Initial _JG_    2-4

**INDEMNITY** We agree to indemnify you and hold you harmless from all damages, losses, and expenses you may sustain by reason of any claim or defense which may be asserted against you and which is related to any Contract we assign to you. We agree to hold you harmless from all damages, losses, or expenses you may sustain if we fail to perform any term or provision of this agreement, or if any representation or warranty contained herein proves untrue or misleading. Without limiting in any manner the generality of the foregoing indemnity provisions, we specifically agree to hold you harmless from all damages, losses, or expenses which you may sustain by reason of our failing to comply with any applicable provisions of the Federal Truth In Lending Act and Regulation Z, the Equal Credit Opportunity Act and Regulation B, the Fair Credit Reporting Act and the laws and regulations of this state in connection with any Contract or transaction represented thereby. We also agree to indemnify you against claims asserted against you for amounts already paid to us or to you, which claims might have been asserted against us if the Contract had not been assigned. Further, if any purchaser fails or refuses to make any payments on any Contract on the ground that the Contract is subject to any claim, counterclaim, or defense he may have against us, we agree to repurchase such Contract from you upon demand by you by paying to you the gross unpaid balance of the Contract, less unearned finance charges. You shall not have any responsibility or obligation to perform any express or implied warranty by us to the purchasers under any Contract.

**WAIVER AND MODIFICATION** We waive notice of nonpayment, protest, and notice of protest on Contracts, notice of the acceptance of this and all other notices to which we might otherwise be entitled by law. You may hold and apply any money, property or Contracts of ours which may come into your possession, to any amounts owing by us hereunder. Your failure to exercise any right hereunder shall not be considered as a waiver of said right, but all rights and remedies contained herein shall be cumulative and not alternative. We shall be responsible for the legal validity or sufficiency of any forms of Contracts or other documents not furnished us by you. No waiver, modification or change of the agreement shall be valid unless accepted by you in writing. You may extend the time for payment of any Contract from time to time without our consent or notice to us and without affecting our liability to you under this agreement or on the Contract. If it becomes necessary for you to engage an attorney to enforce any of the terms of this agreement, we agree to pay you reasonable attorneys' fees in addition to all other amounts owed thereon.

**NOTICES** All notices and other communications under this agreement will be in writing and will be deemed to have been duly given if delivered or mailed first class postage prepaid:

If to you, to:

*SAME AS ON PAGE 4-4 ✓*

with a copy to:

or to you at such other address you will have furnished to us in writing.

If to us to the address shown below or to us at such other address as we will have furnished to you in writing.

**ARBITRATION** Any controversy or claim arising out of or relating to this agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. Judgment on the award rendered by the arbitrator(s) may be entered in

Dealer Initial *JG*                    3-4

any court having jurisdiction thereof. Any arbitration proceeding provided for by this section shall take place in Indianapolis, Indiana and shall be subject to Indiana law.

This agreement is the complete agreement between you and us and supersedes all prior agreements, written or oral, by you, your parent, subsidiary, affiliate, or predecessor and us and shall be binding upon and inure to the benefit of the heirs, personal representatives, successors or assigns of the parties hereto. Either party shall have the right at any time upon written notice to cancel this agreement as to future transactions and such cancellation shall in no way affect our obligations as to the Contracts purchased prior to the effective date of cancellation.

Cliff & Sons Auto Sales
Corporation, Firm Name

7053 Dixie Highway
Street Address

Louisville, Ky 40258
City, State, Zip Code

By: _____
Owner, Officer, or Partner

Josh Geary
Print Owner, Officer, Or Partner name

Dated    6/2/17

Premier Acceptance
7520 E Washington Street
Indianapolis, Indiana  46219

By: _____
Bill Mrozinski, General Manager

Dated:  6/6/2017

Dealer Initial _____    4-4



# Dealer Set-Up Form

## DEALERSHIP BASICS

**Legal Name:** Cliff + Sons Auto Sales LLC
**DBA:** Cliff + Sons Auto Sales
**Street Address:** 7053 Dixie Highway
**City:** Louisville  **State:** Ky  **Zip:** 40258
**Phone:** 502 933-6266  **Email:** jrgeary14@gmail.com
**DealerTrack ID#:** 657412  **RouteOne ID #:**

**Type of Dealership:** ☐ Franchise  ☐ Dealer Group  Independent ✓

**Used - Any specific Make/Model** (Mercedes, Highend, Etc.): N/A

**Average Miles:** 80,000

## F&I CONTACT DETAILS

**Primary F & I Contact Name:** Josh Geary
**Primary Contact Phone:** 502 933-6266
**Primary Contact Email:** jrgeary14@gmail.com
**Additional F&I Contacts** (List): —
**Fax or Email For Funding Notices:** SAME
**Fax for Funding Notice** (If Different): —

## ADDITIONAL AFFILIATED LOCATIONS

**Name / Address:** —
**Name / Address:** —
**Name / Address:** —

## ADDITIONAL COMMENTS

**Visit Dates:** 6/2/17  **Dealer Agreement Left:** ☑ Yes  ☐ No

THANKS!

Alpha Omega Group, LLC
Brad LeBlanc
Direct: (513) 317-9861
Fax: (513) 247-0795
I appreciate the opportunity to serve you!

2/07/2017

KY-102 6/29/2012

## Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | 12963 3311 |
|---|---|---|---|
| Cliff & Sons Auto Sales LLC<br>7053 Dixie Hwy<br>Louisville, KY 40258 | JOHN D MCCLURE<br>LAURA MCCLURE<br>4802 BEECH DR<br>LOUISVILLE, KY 40216 | No.<br>Date | 1/13/2018 |

☐ Business, commercial or agricultural purpose Contract.

### Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 2000.00 |
|---|---|---|---|---|
| 9.99 % | $ 3226.39 | $ 13133.99 | $ 16360.38 | $ 18360.38 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
|  | $ |  |
| 54 | $ 302.97 | Monthly, Beginning 02/12/18 |
|  | $ |  |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due or $15, whichever is greater.

**Prepayment.** If you pay off this Contract early, you ☐ may ☐ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2013 | Volkswagen | Passat | Sedan | 1VWCP7A36DC077306 | 75936 |

☐ New  ☒ Used  ☐ Demo    Other:

### Description of Trade-In

### Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: _____
_____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

### Sales Agreement

**Payment.** You promise to pay us the principal amount of

$ 13133.99 plus finance charges accruing on the unpaid balance at the rate of 9.99 % per year from the date of this Contract until

maturity. Finance charges accrue on a 365 day basis. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at 9.99 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

☐ Processing Fee. You agree to pay a processing fee of $ _____ that will be ☐ paid in cash. ☐ financed over the term of the Contract.

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.<br>Bankers Systems™<br>Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFLZKY 6/29/2012
Page 1 of 5

## Itemization of Amount Financed

| | |
|---|---:|
| a. Cash Price of Vehicle, etc. (incl. sales tax of $ 750.00 ) | $ 13250.00 |
| b. Trade-in allowance | $ N/A |
| c. Less: Amount owing, paid to (includes k): | $ N/A |
| d. Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ N/A |
| e. Cash payment | $ 2000.00 |
| f. Manufacturer's rebate | $ N/A |
| g. Deferred down payment | $ N/A |
| h. Other down payment (describe) | $ N/A |
| i. Down Payment (d+e+f+g+h) | $ 2000.00 |
| j. Unpaid balance of Cash Price (a-i) | $ 11250.00 |
| k. Financed trade-in balance (see line d) | $ N/A |
| l. Paid to public officials, including filing fees | $ 74.00 |
| m. Insurance premiums paid to insurance company(ies) | $ N/A |
| n. Service Contract, paid to: _____ | $ 1210.00 |
| o. Cliff & Sons Auto Sales LLC for Doc Fee | $ 599.99 |
| p. _____ | $ N/A |
| q. _____ | $ N/A |
| r. _____ | $ N/A |
| s. _____ | $ N/A |
| t. _____ | $ N/A |
| u. _____ | $ N/A |
| v. Total Other Charges/Amts Paid (k thru u) | $ 1883.99 |
| w. Prepaid Finance Charge | $ N/A |
| x. Amount Financed (j+v-w) | $ 13133.99 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single ☐ Joint ☐ None
Premium $ N/A    Term _____
Insured _____

**Credit Disability**
☐ Single ☐ Joint ☐ None
Premium $ N/A    Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _____    DOB _____

By: _____    DOB _____

By: _____    DOB _____

**Property Insurance.** You must insure the Property. You may freely choose the insurer and agent through which your insurance is provided. The collision coverage deductible may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A for 0 months of coverage.

This premium is calculated as follows:
☐ $ _____ N/A Deductible, Collision Cov. $ N/A
☐ $ _____ N/A Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ _____ $ N/A

Liability insurance coverage for personal liability and property damage caused to others is not included in this Contract unless checked and indicated.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for _____ of coverage.

[This area intentionally left blank.]

Retail Installment Contract-KY Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFLZKY 6/29/2012
Page 2 of 5

### Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

[X] Service Contract

Term _____
Price $ 1210.00
Coverage _____

[ ] Gap Waiver or Gap Coverage

Term _____
Price $ N/A
Coverage _____

[ ] _____

Term _____
Price $ _____
Coverage _____

By: /s/ JM Clue                Date _____

By: /s/ JM Clue                Date _____

By: _____                 Date _____

### Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any scheduled payment is more than twice as large as the average of your earlier scheduled payments, you may refinance that payment when due without penalty. The terms of the refinancing will be no less favorable to you than the original terms of this Contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**Bad Check Handling Fee.** For purposes of Kentucky Revised Statutes § 514.040, you agree to pay a bad check handling fee of $50.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Kentucky and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
- You fail to perform any obligation that you have undertaken in this Contract.
- We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay our reasonable attorneys' fees after default and referral to an attorney who is not our salaried employee.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:
- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

### Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract to the extent permitted by law.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:
- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

### Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**If you are buying a used vehicle:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

### Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

                                                                1/13/2018
By: _____                                        Date

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

[This area intentionally left blank.]

**Signatures**

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

_____ 1/13/2018
By: JOHN D MCCLURE                    Date

_____ 1/13/2018
By: LAURA MCCLURE                     Date

_____
By:                                   Date

This Contract requires that a copy of it be furnished to you at the time it is executed.
NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE CONTRACT YOU SIGN.
BY SIGNING BELOW, YOU AGREE TO ALL THE TERMS OF THIS CONTRACT INCLUDING THE TERMS ON THE PAGES OF THIS CONTRACT THAT FOLLOW THE PAGE WITH YOUR SIGNATURE. BY SIGNING BELOW, YOU ALSO ACKNOWLEDGE THAT YOU RECEIVED A COPY OF THIS CONTRACT AND HAD A CHANCE TO READ AND REVIEW IT BEFORE YOU SIGNED IT.

Buyer

_____ 1/13/2018
By: JOHN D MCCLURE                    Date

_____ 1/13/2018
By: LAURA MCCLURE                     Date

_____
By:                                   Date
Seller

_____ 1/13/2018
By: Cliff & Sons Auto Sales LLC       Date

**Assignment.** This Contract and Security Agreement is assigned to _____
Premier Acceptance
7520 E Washington St Indianapolis IN 46219, the Assignee, phone (317) 899-7676. This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.
Seller

_____ 1/13/18
By: Cliff & Sons Auto Sales LLC       Date

Retail Installment Contract-KY Not for use in transactions secured by a dwelling
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFLZKY 6/29/2012
Page 5 of 5

**Cliff Auto & Sons Sales**
7053 Dixie Hwy
Louisville, KY 40258
(502) 933-6266

Date: 1/13/2018
Stock # 1636

**BUYER:**
Name: JOHN D MCCLURE
Address: 4802 BEECH DR
City: LOUISVILLE  State: KY  Zip: 40216
DOB: 7/5/1981  SSN: 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
DL#: ___  Phone: (502) 435-9938

**CO-BUYER:**
Name: LAURA MCCLURE
Address: 4802 BEECH DR
City: LOUISVILLE  State: KY  Zip: 40216
DOB: 9/26/1988  SSN: 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
DL#: ___  Phone: (502) 775-9414

**SOLD CAR DESCRIPTION**

YEAR 2013  COLOR Blue
MAKE Volkswagen  BODY TYPE Sedan
MODEL Passat  MILEAGE 75936
VIN# 1VWCP7A36DC077306

**TRADE DESCRIPTION**

YEAR ___
MAKE ___
MODEL ___
VIN# ___
MILEAGE ___
LIENHOLDER ___
ADDRESS ___
PAYOFF: $ N/A

1. CASH PRICE OF VEHICLE  $ 12500.00
2. TRADE ALLOWANCE  $ N/A
3. TAXABLE AMOUNT  $ 12500.00
4. SALES TAX  $ 750.00
5. SERVICE CONTRACT  $ 1210.00
6. DOC  $ 599.99
7. TITLE  $ 74.00
8. LENDER FEE  $ N/A
9. GAP  $ N/A
10. VS  $ 0.00
11. INSURANCE  $ N/A
12. TRADE PAYOFF  $ N/A
13. TOTAL (3 through 12)  $ 15133.99
14. CASH DOWN  $ 2000.00
15. DEFERRED DOWN  $ N/A
16. AMOUNT FINANCED  $ 13133.99

Term 54  Payment 302.97  APR 9.99

Purchaser agrees that this order includes all of the terms and conditions here of, that this order cancels and supersedes prior agreement written or oral. This order shall not become binding until accepted by the DEALER or an authorized representative. I have read the fact of this order and agree to this purchase price. I hereby certify I am 18 years of age.

Buyer Signature  Date 1/13/2018
Co-Buyer Signature  Date

Cliff & Sons Auto Sales LLC
Seller Name  Date 1/13/2018
Seller Signature  Date 1/13/2018

[ ] SOLD AS IS
I MAKE THIS PURCHASE KNOWINGLY WITHOUT ANY GUARENTEE EXPRESSED OR IMPLIED, BY THIS DEALER OR HIS AGENT

THE INFORMATION YOU SEE ON THE BUYERS GUIDE FOR THIS VEHICLE, IS PART OF THIS CONTRACT.